UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BOBBIE JEAN LEADFORD,

                    Plaintiff,                          Case No. 15-cv-13565

v.                                                 Honorable Thomas L. Ludington

BULL MOOSE TUBE COMPANY,

                    Defendant.

_____/

**ORDER DENYING IN PART MOTION TO DISMISS, CONVERTING MOTION TO DISMISS TO MOTION FOR SUMMARY JUDGMENT, DIRECTING LIMITED DISCOVERY, SETTING DISCOVERY CUTOFF DATE, AND DIRECTING SUPPLEMENTAL BRIEFING**

      Plaintiff Bobbie Jean Leadford initiated this suit against Defendant Bull Moose Tube ("BMT") Company on October 9, 2015. Leadford filed a three count complaint alleging negligence, vicarious liability, and violation of the Michigan no-fault act arising out of Brian Bearden's accidental death in January of 2015. Leadford brings these claims on behalf of the estate of her deceased spouse, Mr. Bearden.

      BMT has moved to dismiss Leadford's complaint or, alternatively, have the case transferred to a more convenient district. BMT claims that this Court lacks personal jurisdiction over it and, in the alternative, that Leadford has not stated a claim for which relief may be granted because she has not filed suit against the proper party. Finally, BMT claims that this case would be more appropriately litigated in the Northern District of Indiana, where the accident at issue occurred.

**I.**

Bobbie Leadford is the surviving spouse of Brian Bearden. She is the Personal Representative of his estate and she resides in Gratiot County, Michigan. While alive, Mr. Bearden also resided in Gratiot County.

BMT is a for-profit corporation incorporated under the laws of Missouri. BMT is in the business of manufacturing and distributing steel tubing.

### A.

On January 30, 2015, Mr. Bearden was working as an independent contractor for a trucking company based in Gratiot, Michigan. That day he drove a flatbed trailer truck from Gratiot, Michigan, to a BMT facility in Elkhart, Indiana.

When Mr. Bearden arrived at the Elkhart facility, he parked the truck at a loading bay. Employees of BMT then loaded the truck's trailer with "thirty steel tubes, each tube twenty feet long." Pl.'s Compl. ¶ 12, ECF No. 1. "The tubes were stacked side by side in five stacks of six." *Id*. After the tubes had been stacked, an employee of BMT "'tightened up the load' by moving the stacks closer together." *Id*. at ¶ 13. The employee tightened the load with a crane. He "attached a strap from the crane to or near the bottom of each stack, and then used the power of the crane to move each stack one or two inches closer to the stack adjacent to it so as to promote stability once the tubes were strapped down, covered with a tarp, and taken out on the road." *Id*.

As the BMT employee was tightening the load, Mr. Bearden was standing on the floor of the warehouse, below the employee and to the employee's left. *Id*. at ¶ 14. The employee was aware of Mr. Bearden's location while the employee was tightening the load. *Id*.

During the process of tightening the load the BMT employee proceeded to tighten the stack farthest to the left on the trailer bed. This stack was the closest to where Mr. Bearden was standing. While the BMT employee was tightening the left-most stack, the stack became

unbalanced and fell off the trailer onto Mr. Bearden. Mr. Bearden died from the injuries he sustained.

**B.**

Leadford, on behalf of her deceased husband's estate, filed suit against BMT following her husband's accident. In her complaint she alleges that BMT owns the Elkhart, Indiana facility where Mr. Bearden was killed. Additionally, she alleges that BMT "transacted a continuous and systematic portion of its business in the State of Michigan" and "maintained a production facility in the City of Livonia, County of Wayne, State of Michigan." *Id*. at ¶ 4.

**II.**

BMT has moved to dismiss Leadford's complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 12(b)(3), in that order. Since Rule 12(b)(2) and Rule 12(b)(3) question this Court's ability to entertain this case, they will be addressed first. The Court will then address BMT's arguments for dismissal under Rule 12(b)(6).[1]

**A.**

First, BMT moves pursuant to Federal Rule of Civil Procedure 12(b)(2) to dismiss Leadford's complaint for lack of personal jurisdiction. "[A] challenge to personal jurisdiction must be raised in the first responsive pleading or be waived." *Taubman Co. v. Webfeats*, 319 F.3d 770, 773 (6th Cir. 2003) (citing Fed. R. Civ. P. 12(h)(1)). BMT properly raised its objection to this Court's personal jurisdiction in its first responsive pleading.

There is, however, another way in which defendants may waive objections to personal jurisdiction in the Sixth Circuit despite raising the objection in the first responsive pleading. In *Gerber v. Riordan*, 649 F.3d 514, 520 (6th Cir. 2011), the Sixth Circuit held that defendants

---

[1] BMT also argues that this case should be transferred to a more convenient forum under 28 U.S.C. § 1404. Consideration of that argument will be deferred in light of BMT's arguments pursuant to Rule 12(b)(6).

waived their objection to the district court's lack of personal jurisdiction when their attorney entered a general appearance in the district court. Although *Gerber* is somewhat inapposite to the procedural facts of this case, the Sixth Circuit's rule was unequivocally broad. Indeed, the Sixth Circuit has since confirmed *Gerber*'s waiver rule. In *M & C Corp. v. Erwin Behr GmbH & Co., KG*, 508 F. App'x 498, 501 (6th Cir. 2012), the Sixth Circuit reiterated that *Gerber* "require[es] courts in the Sixth Circuit to exercise personal jurisdiction whenever a defendant's attorney enters a general appearance."

The rule is harsh insofar as it relies on a historical distinction based on counsel's labeling of his or her appearance as general or special and because it is not supported by the current law of federal procedure. The distinction between general and special appearances was abolished in 1938. *See* § 3829 Waiver of Venue Defects, Wright and Miller, 14D Fed. Prac. & Proc. Juris. (4th ed.). Accordingly, a party no longer waives objections to personal jurisdiction by entering a general appearance, since general appearances are no longer distinct from special appearances. The Sixth Circuit has held that "[i]n order to object to a court's exercise of personal jurisdiction, it is no longer necessary to enter a 'special appearance.'" *Cty. Sec. Agency v. Ohio Dep't of Commerce*, 296 F.3d 477, 483 (6th Cir. 2002).

The dissent in *Gerber* comprehensively detailed the evolution of the rule on general appearances. Despite this, the *Gerber* court articulated a bright-line waiver rule for objections to personal jurisdiction, one that was later reiterated by the Sixth Circuit. To the extent there is conflict between opinions of the Circuit, its most recent pronouncement on the subject must control here. The discrepancy is beyond the authority of this Court to resolve. The rule of *Gerber* must be applied.

Here, BMT's counsel entered a general appearance on BMT's behalf. The notice of appearance reads: "Please enter the Appearance of MARYELLEN McLEOD, of McLEOD & ASSOCIATES, as the attorney for the above-entitled Defendant, BULL MOOSE TUBE COMPANY." Def.'s Not. of Appearance, ECF No. 5. By entering a general appearance, BMT waived its personal jurisdiction argument under *Gerber.*

### B.

Next, BMT moves to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(3) for improper venue.

### 1.

As with its personal jurisdiction argument, Leadford argues that BMT's improper venue argument was waived when its counsel entered a general appearance. It cites to at least one Sixth Circuit case that stands for that proposition. In *Montgomery Ward & Co. v. Buer*, 186 F.2d 614, 615 (6th Cir. 1951), the Sixth Circuit held that "[a]n objection that the complaint is filed in the wrong district is waived unless it is taken before the entry of a general appearance and before some other defense upon the law or facts is set up." The case articulating the rule is an old one, however. And no more recent case has been furnished standing for the point.[2] Additionally, Montgomery Ward relies on a Supreme Court case that preceded the 1938 abolition of the distinction between general and special appearances. Thus, there does not appear to be any authority for assigning waiver to BMT's claim.

Leadford argues that the *Gerber* rule has been extended by the Sixth Circuit to Rule 12(b)(3) challenges. But it furnishes no authority for that proposition. She argues that *State Auto Ins. Co. v. Thomas Landscaping & Const., Inc.*, 494 F. App'x 550 (6th Cir. 2012), accomplished

---

[2] Leadford argues that *State Auto Ins. Co. v. Thomas Landscaping & Const., Inc.*, 494 F. App'x 550 (6th Cir. 2012), also supports the rule. But that case is inapposite and does not, as Leadford claims, extend the rule from *Gerber* to claims of improper venue.

this task. But that case is inapposite and says nothing about *Gerber* or its punitive waiver rule. In *Thomas Landscaping* the Sixth Circuit held that the defendant had waived its personal jurisdiction and improper venue defenses because it had filed a pro se answer that did not assert either defense. Although as a corporation it could not appear pro se, the defendant never moved to strike the answer as improper after it had retained counsel. The Sixth Circuit held that the district court did not err in relying on the initial answer to conclude that the defendant had waived its personal jurisdiction and improper venue objections.

Because there is no authority for extending the waiver rule from *Gerber* to Rule 12(b)(3) motions, the rule will not be applied here.

**2.**

In diversity actions, venue is proper in "a judicial district in which any defendant resides, if all defendants are residents of the State in which the district is located." 28 U.S.C. § 1391(b)(1). Leadford argues that her complaint properly asserts the presence of BMT in Michigan, making it amenable to suit in the Eastern District. But the answer is not so simple as Leadford suggests.

Unlike with motions under Rule 12(b)(6), a court considering a Rule 12(b)(3) motion may consider facts extrinsic to the pleadings. *Argueta v. Banco Mexicano, S.A.*, 87 F.3d 320, 324 (9th Cir. 1996). In support of its argument, BMT includes an affidavit from Stephen Birk, the Vice President of Finance for BMT. Mr. Birk explains that the Livonia, Michigan plant identified by Leadford is owned by Grand River Fabricating, Inc., a wholly-owned subsidiary of BMT incorporated under the laws of Missouri. He also explains that the Elkhart facility is owned by Bock Industries, Inc., a wholly-owned subsidiary of BMT. Thus, according to the affidavit,

BMT has no contacts with the State of Michigan. The only nexus it maintains with the State of Michigan arises through business conducted by one of its wholly-owned subsidiaries.

Under the general venue statute, a corporation is deemed to reside in any district where it is subject to personal jurisdiction. 28 U.S.C. § 1391(c)(2) ("[A]n entity with the capacity to sue and be sued in its common name under applicable law, whether or not incorporated, shall be deemed to reside, if a defendant, in any judicial district in which such defendant is subject to the court's personal jurisdiction with respect to the civil action in question"). The inquiry becomes circular. Even if *Montgomery Ward* is not good law, the *Gerber* waiver rule applies de facto because under that rule BMT has conceded that it is subject to the Court's personal jurisdiction. BMT's motion under Rule 12(b)(3) will be denied.

## C.

Finally, BMT moves to dismiss Leadford's complaint under Federal Rule of Civil Procedure 12(b)(6). It argues that Leadford does not state a claim for which relief may be granted because Leadford sued the wrong party. It claims that the Livonia, Michigan plant that Leadford alleges is owned by BMT is actually owned by a wholly-owned subsidiary of BMT. Further, the Elkhart plant where Mr. Bearden was killed is owned by another wholly-owned subsidiary of BMT.

This Court may dismiss a pleading for "failure to state a claim upon which relief can be granted." FED. R. CIV. P. 12(b)(6). A pleading fails to state a claim if it does not contain allegations that support recovery under any recognizable legal theory. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). In considering a Rule 12(b)(6) motion, the Court construes the pleading in the non-movant's favor and accepts the allegations of facts therein as true. *See Lambert v. Hartman*, 517 F.3d 433, 439 (6th Cir. 2008). The pleader need not have provided "detailed factual

allegations" to survive dismissal, but the "obligation to provide the 'grounds' of his 'entitle[ment] to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). In essence, the pleading "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570).

As noted above, BMT attaches an affidavit from Stephen Birk, the Vice President of Finance for BMT to its motion to dismiss. BMT concedes, however, that the affidavit of Mr. Birk is evidence outside of the pleadings. Rule 12(b)(6) motions must typically be limited to consideration of the pleadings or converted to a motion for summary judgment under Federal Rule of Civil Procedure 12(d). *Tackett v. M & G Polymers, USA, L.L.C.*, 561 F.3d 478, 487 (6th Cir.2009). However, the Sixth Circuit has held that "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to her claim." *Weiner v. Klais and Co., Inc.*, 108 F.3d 86, 88 (6th Cir. 1997). The Birk affidavit is, as BMT recognizes, extrinsic to the pleadings. *Harris v. Jones*, 869 F.2d 1490 (6th Cir. 1989) ("When the district court considers affidavits, the court should construe the motion to dismiss as a motion for summary judgment.").

Because the Birk Affidavit is extrinsic to the pleadings, BMT asks the Court, in its reply brief, to convert its motion to one for summary judgment. It claims that the Court can do this *sua sponte*. It may, but it also must do so with notice to both parties that they have "a reasonable opportunity to present all the material that is pertinent to the motion." Fed. R. Civ. P. 12(d).

Since the issues raised by the Birk Affidavit may be dispositive of the present dispute, conversion is warranted. The parties will be given a special discovery period of one month.

- 8 -

During that period the parties may conduct discovery related only to the ownership of the Elkhart, Indiana facility where Mr. Bearden was killed and the relationship between the owner of the facility and Defendant Bull Moose Tube Company. No other discovery is permitted. At the close of this limited discovery period, the parties shall submit supplemental briefs concerning the issue of the Elkhart, Indiana facility's ownership and the owner's relationship to BMT (if an entity other than BMT owns the facility). The briefs shall be submitted in conformity with the briefing schedule set out below. Leadford's response brief shall not exceed fifteen pages. BMT's reply brief shall not exceed seven pages. And Leadford's surreply brief shall not exceed seven pages.

### III.

Accordingly, it is **ORDERED** that Defendant Bull Moose Tube Company's Motion to Dismiss, ECF No. 12, is **DENIED in part**. Specifically, Defendant Bull Moose Tube Company's motions to dismiss pursuant to Rules 12(b)(2)&(3) are denied with prejudice. Defendant Bull Moose Tube Company's motion to transfer under 28 U.S.C. § 1404 is denied without prejudice.

It is further **ORDERED** that Defendant Bull Moose Tube Company's Motion to Dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), ECF No. 12, is **CONVERTED** to a motion for summary judgment pursuant to Federal Rule of Civil Procedure 56.

It is further **ORDERED** that the parties are **DIRECTED** to engage in discovery, limited to the scope defined herein, for the purpose of preparing supplemental briefs to Defendant Bull Moose Tube Company's motion for summary judgment.

It is further **ORDERED** that limited discovery **CLOSES** on **April 15, 2016**.

It is further **ORDERED** that the parties are **DIRECTED** to submit supplemental briefs to Defendant Bull Moose Tube Company's motion for summary judgment as follows:

| | |
|---|---|
| Plaintiff's 15-page Response Brief: | **April 22, 2016** |
| Defendant's 7-page Reply Brief: | **April 29, 2016** |
| Plaintiff's 7-page Surreply Brief: | **May 6, 2016** |

Dated: March 15, 2016

s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on March 15, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager