UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
NORTHERN DIVISION

BOBBIE JEAN LEADFORD,

        Plaintiff,                      Case No. 15-cv-13565

v.                                    Honorable Thomas L. Ludington

BULL MOOSE TUBE COMPANY,

        Defendant.

_____/

**ORDER GRANTING MOTION TO DISMISS AND DISMISSING COMPLAINT WITHOUT PREJUDICE**

Plaintiff Bobbie Jean Leadford initiated this suit against Defendant Bull Moose Tube ("BMT") Company on October 9, 2015. Leadford filed a three count complaint alleging negligence, vicarious liability, and violation of the Michigan no-fault act arising out of Brian Bearden's accidental death in January of 2015. Leadford brings these claims on behalf of the estate of her deceased spouse, Mr. Bearden.

BMT has moved to dismiss Leadford's complaint or, alternatively, have the case transferred to a more convenient district. BMT claims that this Court lacks personal jurisdiction over it and, in the alternative, that Leadford has not stated a claim for which relief may be granted because she has not filed suit against the proper party. Finally, BMT claims that this case would be more appropriately litigated in the Northern District of Indiana, where the accident at issue occurred.

On March 25, 2016, this Court entered an order directing one month of discovery on the issues raised in BMT's motion to dismiss. The order also directed the parties to submit

supplemental briefs on these issues. *See* ECF Nos. 23 & 25. The parties have submitted their briefs and the issues are ready for adjudication.

**I.**

Bobbie Leadford is the surviving spouse of Brian Bearden. She is the Personal Representative of his estate and she resides in Gratiot County, Michigan. While alive, Mr. Bearden also resided in Gratiot County.

BMT is a for-profit corporation incorporated under the laws of Missouri. BMT is in the business of manufacturing and distributing steel tubing.

**A.**

On January 30, 2015, Mr. Bearden was working as an independent contractor for a trucking company based in Gratiot, Michigan. That day he drove a flatbed trailer truck from Gratiot, Michigan, to a BMT facility in Elkhart, Indiana.

When Mr. Bearden arrived at the Elkhart facility, he parked the truck at a loading bay. Employees of BMT then loaded the truck's trailer with "thirty steel tubes, each tube twenty feet long." Pl.'s Compl. ¶ 12, ECF No. 1. "The tubes were stacked side by side in five stacks of six." *Id*. After the tubes had been stacked, an employee of BMT "'tightened up the load' by moving the stacks closer together." *Id*. at ¶ 13. The employee tightened the load with a crane. He "attached a strap from the crane to or near the bottom of each stack, and then used the power of the crane to move each stack one or two inches closer to the stack adjacent to it so as to promote stability once the tubes were strapped down, covered with a tarp, and taken out on the road." *Id*.

As the BMT employee was tightening the load, Mr. Bearden was standing on the floor of the warehouse, below the employee and to the employee's left. *Id*. at ¶ 14. The employee was aware of Mr. Bearden's location while the employee was tightening the load. *Id*.

During the process of tightening the load the BMT employee proceeded to tighten the stack farthest to the left on the trailer bed. This stack was the closest to where Mr. Bearden was standing. While the BMT employee was tightening the left-most stack, the stack became unbalanced and fell off the trailer onto Mr. Bearden. Mr. Bearden died from the injuries he sustained.

**B.**

Leadford, on behalf of her deceased husband's estate, filed suit against BMT following her husband's accident. In her complaint she alleges that BMT owns the Elkhart, Indiana facility where Mr. Bearden was killed. Additionally, she alleges that BMT "transacted a continuous and systematic portion of its business in the State of Michigan" and "maintained a production facility in the City of Livonia, County of Wayne, State of Michigan." *Id.* at ¶ 4.

**II.**

BMT has moved to dismiss Leadford's complaint under Federal Rules of Civil Procedure 12(b)(2), 12(b)(6), and 12(b)(3), in that order. Since this Court does not have jurisdiction over Defendant BMT, only Defendant's argument under Rule 12(b)(2) will be addressed.

"Presented with a properly supported 12(b)(2) motion and opposition, the court has three procedural alternatives: it may decide the motion upon the affidavits alone; it may permit discovery in aid of deciding the motion; or it may conduct an evidentiary hearing to resolve any apparent factual questions." *Theunissen*, 935 F.2d at 1458. Leadford bears the burden of establishing that the Court has jurisdiction over Defendant. *Singh v. Daimler, AG*, 902 F. Supp. 2d 974, 978 (E.D. Mich. 2012).

**A.**

Leadford argues that BMT is appropriately subject to general personal jurisdiction in Michigan because it operates a subsidiary in Livonia, Michigan: Bull Moose Engineering ("BME"). According to Leadford, BME is a mere alter-ego of BMT, thus permitting this Court to exercise jurisdiction over the dispute.

In *Daimler AG v. Bauman*, 134 S.Ct. 746 (2014), the Supreme Court recognized a theory of alter ego personal jurisdiction in which "a subsidiary's jurisdictional contacts can be imputed to its parent only when the former is so dominated by the latter as to be its alter ego." *Id*. at 759. The Court expressly rejected the Ninth Circuit's holding that the finding of an "agency" relationship between a foreign parent entity and a local subsidiary was sufficient to impute personal jurisdiction to the parent. *Id*.

"The alter-ego theory provides for personal jurisdiction if the parent company exerts so much control over the subsidiary that the two do not exist as separate entities but are one and the same for purposes of jurisdiction." *Indah v. U.S. S.E.C.*, 661 F.3d 914, 921 (6th Cir. 2011) (internal quotation marks omitted). To pierce the corporate veil and apply the alter-ego theory in this case—one founded on the diversity of the parties—the Court must look to Michigan law. *Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008) (applying Ohio alter-ego law in diversity dispute).

Under Michigan law, there is a presumption that, "absent some abuse of the corporate form, parent and subsidiary corporations are separate and distinct entities." *Seasword v. Hilti, Inc.*, 449 Mich. 542, 547 (Mich. 1995). To rebut this presumption a party must show that a subsidiary is a "mere instrumentality" of the parent. *Id*. As explained by the Michigan Court of Appeals:

> Facts tending to show the existence of an alter ego relationship include if the parent and subsidiary share principal offices, if they share board members or

> executives, if all of the parent's revenue comes from the subsidiary's sales, if all capital for the subsidiary is provided by the parent, if the subsidiary purchases supplies exclusively from the parent, if the subsidiary is seriously undercapitalized, if the parent regularly provided gratuitous services to the subsidiary, if the parent handled the subsidiary's payroll, if the parent directed the policies and decisions of the subsidiary, and if the parent considered the subsidiary's project to be its own.

*United Ins. Grp. Agency, Inc. v. Patterson*, Case No. 299631, 2011 WL 5067251, at *2 (Mich. Ct. App. Oct. 25, 2011) (citing *Seasword*, 449 Mich. at 548 n.10, and *Herman v. Mobile Homes Corp.*, 317 Mich. 233, 239–41 (1947)).

Leadford has not met her burden of proof that the Court has personal jurisdiction over BMT. To justify the exercise of personal jurisdiction, Leadford needs to demonstrate that BMT uses BME as a mere alter ego. Leadford has only shown that BMT owns 100% of BME. While BMT does hold BME out as an arm of BMT, merely doing business as a parent entity does not make a subsidiary an alter-ego of the parent company.

**B.**

Leadford also makes a separate argument, although not separately identified by her. She claims that BMT conducts sufficient business in the State of Michigan to be deemed to have "affiliations with the State are so 'continuous and systematic' as to render [it] essentially at home in the . . . State." *Daimler AG v. Bauman*, 134 S. Ct. 746, 761 (2014) (quoting *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011)). Leadford's main argument in support of this contention is the fact that, since January 1, 2014, "BMT sold $26,995,420.26 of steel tubing to 43 commercial customers spread over more than 100 geographical locations throughout Michigan's lower peninsula." Pl.'s Supp. Br. 5, ECF No. 34. But Leadford relies upon sales figures for wholly owned subsidiaries that she has not proven are alter-egos of BMT. Even accepting that Bock Industries—the company that operates the Elkhart, Indiana facility where Bearden was killed—is an alter-ego of BMT, the sales figures cited by Leadford would

only amount to roughly 5% of BMT's total sales in the United States. Leadford also cites to the fact that BMT holds itself out as having a facility in Michigan. This, per Leadford, is additional evidence that BMT is "at home" in the state.

It is not. These facts do not rise to the type of "systematic and continuous" contacts sufficient to render BMT "at home" in Michigan. The Supreme Court emphasized that the important element of the general personal jurisdiction inquiry is whether the company is "at home" in the forum state. *Daimler*, 134 S. Ct. at 761. Mere "systematic and continuous" contacts are insufficient. Id. In fact, the *Daimler* court specifically addressed the existence of a significant sales relationship between the defendant and the forum state. It noted that if a significant sales presence was enough to confer general personal jurisdiction such jurisdiction "would presumably be available in every other State in which [the defendant's] sales are sizable." *Id*.

This Court does not have general personal jurisdiction over BMT.

## C.

Lastly, Leadford has attempted to contend that this Court also has specific personal jurisdiction over BMT. "Specific jurisdiction . . . depends on an 'affiliatio[n] between the forum and the underlying controversy,' principally, activity or an occurrence that takes place in the forum State and is therefore subject to the State's regulation. *Goodyear*, 564 U.S. at 919 (quoting von Mehren & Trautman, Jurisdiction to Adjudicate: A Suggested Analysis, 79 Harv. L.Rev. 1121, 1136 (1966). Specific personal jurisdiction must relate to "the very controversy that establishes jurisdiction." *Id*.

Defendant argues that Leadford has waived this argument because she did not raise the argument until late in briefing. She argued that this Court has specific jurisdiction over BMT in her reply brief in support of the supplemental brief that the Court's March 15, 2016 and March

25, 2016 Orders directed her to file. As Defendant's observe, her argument has been waived. *Scottsdale Ins. Co. v. Flowers*, 513 F.3d 546, 553 (6th Cir. 2008) ("[W]e have found issues to be waived when they are raised for the first time in motions requesting reconsideration or in replies to responses.").

In any event, her argument is meritless because she has not carried her burden of proof. All Leadford furnishes in support of her argument that BMT is subject to specific jurisdiction is the shipping contract under which Bearden operated on behalf of his employer. BMT is not a party to the shipping contract, however. The shipping contract only identifies BMT as the "Shipper Pick/Up." Shipping Contract, Ex. A, Pl.'s Supp. Br., ECF No. 37. It offers no proof that BMT entered into the contract and thus actively solicited a Michigan-based shipping company.

### III.

Accordingly, it is **ORDERED** that Defendant Bull Moose Tube Company's Motion to Dismiss, ECF No. 12, is **GRANTED**.

It is further **ORDERED** that Plaintiff's Complaint, ECF No. 1, is **DISMISSED without prejudice**.

Dated: August 2, 2016  s/Thomas L. Ludington
THOMAS L. LUDINGTON
United States District Judge

PROOF OF SERVICE

The undersigned certifies that a copy of the foregoing order was served upon each attorney or party of record herein by electronic means or first class U.S. mail on August 2, 2016.

s/Michael A. Sian
MICHAEL A. SIAN, Case Manager